**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - -X

In re:

                               Chapter 7

EDIE BRITMAN SAURO            Case No. 05-40202 (RTL)

        Debtor.
- - - - - - - - - - - - - - - - - - - - - - - - -X

**OPINION**

**APPEARANCES:**

Edie Britman Sauro
(Debtor *Pro Se*)

Richard S. Yusem, Esq.
Richard S. Yusem, P.A
(Attorneys for Non-Debtor Spouse, Frank Sauro)

Theodore Liscinski, Jr., Esq.
Theodore Liscinski, Jr. LLC
(Attorneys for Chapter 7 Trustee, Theodore Liscinski, Jr.)

**RAYMOND T. LYONS, U.S.B.J.**

**INTRODUCTION**

      At issue in this case is whether the automatic stay applies to a non-debtor spouse's interest in the net proceeds from the sale of jointly owned real property sold by the trustee. The court finds one-half of such proceeds belong to the non-debtor spouse. These proceeds are not currently property of the debtor's estate. Even if these proceeds are awarded to the debtor as equitable distribution between the spouses they cannot become property of the estate because

1

more than 180 days has passed since this bankruptcy case commenced. Therefore, the automatic stay does not apply to the non-debtor spouse's interest in the proceeds.

## JURISDICTION

This court has jurisdiction under 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a), and the Standing Order of Reference by the United States District Court for the District of New Jersey dated July 23, 1984, referring all proceedings related to a case under title 11 of the United States Code to the bankruptcy court. This is a core proceeding under 28 U.S.C. § 157(b)(2)(G) because it is a motion for relief from the automatic stay.

## FINDINGS OF FACT AND PROCEDURAL HISTORY

Edie Britman Sauro, the debtor in this case, and Frank Sauro, her estranged husband, owned real property in Clinton, New Jersey as tenants by the entirety. This property served as the marital home until the couple entered into divorce proceedings in 2004. No judgment of divorce or order for equitable distribution has been entered in the state court.

Due to mounting legal fees and credit card debt, Ms. Sauro filed a voluntary chapter 7 petition in September 2005. In January 2006, the chapter 7 trustee received an offer on the property from a third party purchaser and made a motion to sell the property pursuant to 11 U.S.C. § 363. The motion was approved on February 27, 2006.

The Trustee sold the property with the cooperation of Mr. Sauro, who signed a deed at the time of sale transferring his interest in the property to the Trustee's buyers.[1] The closing

---

[1] In November 2005, the Trustee instituted an adversary proceeding against several parties, including Mr. Sauro. The Trustee sought to sell Mr. Sauro's interest in the Clinton property pursuant to 11 U.S.C. § 363(h). However, Mr. Sauro was dismissed from the proceeding by stipulation filed on July 28, 2006. This dismissal was presumably based on his willingness to cooperate with the Trustee.

took place on April 21, 2006, at which time common liens were paid and net proceeds were generated. The Trustee placed one-half of the proceeds into his bankruptcy trustee account to be used to pay Ms. Sauro's creditors. With the consent of the Sauros, the remainder of the proceeds were placed in the Trustee's attorney trust account.

Prior to the sale, a joint telephone conference was held on January 27, 2006, between this court, the state court, the Trustee, Mr. Sauro, and two attorneys for Ms. Sauro. The purpose of the call was to deal with the many overlapping issues stemming from the Sauros' divorce proceedings and Ms. Sauro's bankruptcy case. It was agreed that the automatic stay would be lifted in several respects in order to allow the state court to decide virtually all of the matrimonial issues. However, no order was entered reflecting the outcome of the call until August 23, 2006. That order specifically stated:

- To the extent required, relief from the automatic stay is granted to Frank Sauro and Edie Britman Sauro, to seek equitable distribution of property titled in the name of Frank Sauro or Frank Sauro's right to one half of the net proceeds of the sale of the matrimonial residence.

and

- This court has not determined whether any property that may be awarded to Edie Britman Sauro by way of equitable distribution is property of her bankruptcy estate.

Order Regarding Automatic Stay, ¶¶ 2 & 4, p. 3, Docket No. 05-40202, Doc. 72, Aug. 23, 2006.

In March 2008, Mr. Sauro filed a motion in the state court requesting the turnover of the proceeds in the Trustee's attorney trust account. The Trustee was noticed on this motion and filed opposition arguing that:

> [The state court] may determine that Mr. Sauro is entitled to one-half of the net proceeds from the sale of the house. Alternatively, [the court] may rule that Mr. Sauro is entitled to less than one-half of the said net proceeds. In that case, those funds to which he is not entitled will become part of the bankruptcy estate.

Motion for Relief from Stay, Exhibit E, ¶ 5, Docket No. 05-40202, Doc. 97-2, Apr. 11, 2008.

3

The state court declined to resolve the turnover issue and refused to determine the equitable distribution of the Sauros' assets until this issue was decided by the bankruptcy court.

Mr. Sauro then filed this motion to lift the stay. Mr. Sauro argues the automatic stay does not apply to his one-half of the proceeds being held by the Trustee because these proceeds are not property of the estate. *See* 11 U.S.C. §§ 362(a)(2)-(5); 541(a)(5). The Trustee did not object to this motion but was present at the time the motion was heard.

## **DISCUSSION**

The interplay of bankruptcy law and state family law presents complicated issues for both the federal and state courts to tackle. As these areas have become increasingly intertwined "[t]he law which has evolved displays the ongoing tension between the desire to leave marital dissolution decisions to the state courts on the one hand and the need to deal fairly with all creditors and to ensure the debtor's bankruptcy fresh start on the other." 1-5 COLLIER FAMILY LAW AND THE BANKRUPTCY CODE ¶ 5.01 (2008).[2] Such complications often arise regarding the division of property between divorcing spouses when one spouse has filed bankruptcy.

Upon filing bankruptcy, an estate is created pursuant to 11 U.S.C. § 541. The estate includes essentially "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The trustee has the power to sell property of the estate under 11 U.S.C. § 363. If the debtor only has a partial interest in the property being

---

[2] *See also* LINDA R. GREER, THE USE OF ABSTENTION AND THE AUTOMATIC STAY TO ALLOW STATE COURTS TO DECIDE DOMESTIC RELATIONS MATTERS, 6 BANK. DEV. J. 371, 371 (1989) ("When bankruptcy occurs during divorce proceedings, confusion for the courts and increased trauma for the family often result. The combination of divorce and bankruptcy pits federal law governing the debtor's property against state domestic relations law governing the non-debtor's financial and property rights.").

sold the Trustee may sell the co-owner's interest so long as the trustee satisfies the requirements of § 363(h) or the co-owner consents to the sale.  However, the non-debtor is entitled to the proceeds from the sale proportionate to his interest in the property. 11 U.S.C. § 363(j).  "These proceeds are not distributed by the trustee to unsecured creditors, since the nondebtor is not in bankruptcy. However, liens of secured creditors would be paid in order to sell the property or else would attach to the nondebtor's proceeds."  1-2 COLLIER FAMILY LAW AND THE BANKRUPTCY CODE ¶ 2.06[3] (2008).

Also, upon filing, the automatic stay goes into effect.  *See* 11 U.S.C. § 362.  The automatic stay prevents "judicial proceedings to recover prepetition claims against the debtor," as well as "acts to exercise control over property of the estate" including equitable distribution in kind of the property of the bankruptcy estate.  *In re Becker*, 136 B.R. 113, 115 (Bankr. D.N.J. 1992).  *See also In re Howell*, 311 B.R. 173, 179 (Bankr. D.N.J. 2004).

The issue arising in this case is whether the trustee has a right to hold in trust, and refuse to distribute, a non-debtor spouse's portion of the proceeds of a sale of property based on the debtor's inchoate claim for equitable distribution.  No case was cited by the parties dealing with this specific issue, and the court was unable to find any case on point.  The cases found dealing with equitable distribution and bankruptcy have either concerned assertions by a non-debtor spouse to rights in property titled in the debtor's name[3] or other claims against the debtor's

---

[3] *Lawrence v. Lawrence (In re Lawrence)*, 237 B.R. 61 (Bankr. D.N.J. 1999) (non-debtor spouse asserting claim for equitable distribution against estranged debtor-spouse's bankruptcy estate); *In re Becker*, 136 B.R. 113 (Bankr. D.N.J. 1992) (non-debtor spouse sought leave to proceed in Superior Court with her equitable distribution claim against estranged debtor-spouse).

estate.[4] Neither of these situations is applicable here where the issue is whether a trustee can assert a claim as to property belonging to a non-debtor spouse that may be subject to equitable distribution.

Mr. Sauro's one-half of the net proceeds from the sale of the marital home is not property of the estate. This property was held by the Sauros as tenants by the entirety.[5] Upon Ms. Sauro's bankruptcy filing, her interest in the home became property of the estate pursuant to § 541 because Ms. Sauro had a legal interest in the property. The Trustee sold the property with the consent of Mr. Sauro, who signed a deed at the time of sale transferring his interest in the property to the Trustee's buyers.

Mr. Sauro is entitled to one-half of the net proceeds. "[I]f real property formerly held in tenancy by the entirety and now held in tenancy in common by a bankruptcy trustee and nondebtor spouse is sold by the trustee, each of the owners is entitled to one-half of the net proceeds." *Mueller v. Youmans (In re Youmans)*, 117 B.R. 113, 118 (Bankr. D.N.J. 1990). *See also* 11 U.S.C. § 363(j). Therefore, the Trustee has no right to this money, and the automatic stay does not apply.

---

[4] *Mueller v. Youmans (In re Youmans)*, 117 B.R. 113 (Bankr. D.N.J. 1990) (trustee sought approval to sell debtor's property under §§ 363(b) and (h), but non-debtor spouse objected to sale arguing she had more than a one-half interest in the jointly owned property).

[5] "Under New Jersey law, 'each tenant by the entirety is a tenant in common with the other during the joint lives of the spouses. Upon the death of a spouse, the survivor is then the sole owner.'" *Youmans*, 117 B.R. at 116 (quoting *Newman v. Chase*, 359 A.2d 474, 477 (1976)). However, "[a] tenant by the entirety can alienate his or her right of survivorship . . . ." *Id.* If this occurs, "[t]he purchaser at an execution sale of the interest of a debtor spouse in real property becomes a tenant in common with the nondebtor spouse." *Id.* at 117. Therefore, "[i]f the ownership interests of tenants by the entirety are presumed to be equal, then it follows that each is a half owner." *Id.* at 118.

Even if the state court, in determining the equitable distribution of property in the Sauros' divorce, awards some or all of these funds to Ms. Sauro or a settlement as to the distribution of these funds is reached, the proceeds will still not be property of the estate.

The only possible authority for concluding the proceeds are property of the estate is § 541(a)(5)(B), which includes in the definition of property of the estate:

> [a]ny interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire *within 180 days* after such date – as a result of a property settlement agreement with the debtor's spouse, or of an interlocutory or final divorce decree . . . .

11 U.S.C. § 541(a)(5)(B) (emphasis added). This section is inapplicable in the current case. Since this case was filed in September 2005, the 180-day bar date has long since passed. By negative implication any property that the debtor may acquire by equitable distribution later than 180 days following her petition would not be property of the estate. Therefore, any determination regarding the distribution of the proceeds now would not be affected by this provision.

This conclusion is bolstered by a bankruptcy decision from the Western District of Pennsylvania. In *Zebley v. Davis (In re Davis)*, 356 B.R. 385 (Bankr. W.D. Pa. 2006), the chapter 7 trustee objected to the debtor claiming an exemption on real property he owned with his wife as tenants by the entirety. *Id.* at 386. The basis of this objection was that the couple was in the midst of divorce proceedings. *Id.* The trustee set out a formal objection that the court rejected.[6] *Id.* at 386-87. The court then addressed an additional argument made by the trustee.

---

[6] The trustee contended the couple's divorce proceeding "terminated the tenancy by the entirety between the Debtor and his wife so that, as of the date of the Debtor's bankruptcy petition filing, the Residence no longer constituted entireties property that could be exempted in

*Id.* at 387. The court explained that in objecting to the exemption:

> [t]he Trustee points out that the Debtor, by virtue of his right to equitable distribution via the pending divorce action between him and his wife . . . may ultimately, at some future date, receive a distribution of the Residence titled then in a fashion that will necessarily be other than by tenancy by the entirety. By so arguing, the Trustee raises the issue of whether such future distribution of the Residence, which distribution would also arguably result in the receipt of property by the Debtor that constitutes bankruptcy estate property via 11 U.S.C. § 541(a)(5) & (6), would operate to nullify the Debtor's earlier exemption of the Residence as entireties property via § 522(b)(3)(B).

*Id.* The court rejected this argument on several grounds including that "any future post-petition change in the manner in which the Residence might be titled in the Debtor's name would not, in any event, operate to negate the Debtor's present exemption of the Residence via § 522(b)(3)(B) . . . ." *Id.* at 388. The court found the possibility of future equitable distribution did not change the current character of the property. While this decision deals with exemptions, it is instructive by way of analogy. The *Davis* court found the possibility of future equitable distribution of the residence did not alter the debtor's current rights in the property, such as his ability to claim an exemption for property held as tenants by the entirety. Similarly, in this case, the possibility of future equitable distribution does not change the fact that Mr. Sauro's portion of the proceeds from the sale of the Clinton property belongs to him alone and is not property of the estate.

## **CONCLUSION**

In further clarification of the order entered by this court in August 2006, Mr. Sauro's one-half of the net proceeds from the sale of the Clinton property is not subject to the automatic stay. These proceeds are not property of Ms. Sauro's bankruptcy estate and belong to Mr. Sauro alone. This is true despite the fact that these funds may be subject to equitable distribution

---

bankruptcy via § 522(b)(3)(B) . . . ." *Davis*, 356 B.R. at 387.

between the Sauros in their divorce case.  The Sauros may return to state court to seek equitable distribution of their assets as the issue regarding the ownership and encumbrance of these funds has been decided.

Dated: May 30, 2008                                  **/S/Raymond T. Lyons**
                                                           United States Bankruptcy Judge